```
-----------------------------X-----------------------------
JONATHAN PENA,               :UNITED STATES DISTRICT COURT
                             :EASTERN DISTRICT OF NEW YORK
              Plaintiff(s),  :
                             :CASE No.:17-CV-00755 (LDH)
     against                 :
                             :CIVIL ACTION
                             :
THE CITY OF NEW YORK, POLICE :SECOND AMENDED COMPLAINT
OFFICER ANTHONY JONES, POLICE:
OFFICER MICHAEL CARRIERI,    :
SERGEANT MINH TRAN, POLICE   :
OFFICER JOSEPH LAROSA, and   :
JOHN AND JANE DOES 1-5       :PLAINTIFF DEMANDS
                             : TRIAL BY JURY
                             :
                             :
              Defendant(s).  :
-----------------------------X-----------------------------
```

TAKE NOTICE, the Plaintiff, Jonathan Pena, hereby appears in this action by his attorneys, Nwokoro & Scola, Esquires, and demands that all papers be served upon them, at the address below, in this matter.

Plaintiff, Jonathan Pena, by his attorneys, Nwokoro & Scola, Esquires, complaining of the defendants, The City of New York, Police Officer Anthony Jones, Police Officer Michael Carrieri, Sergeant Minh Tran, Police Officer Joseph Larosa and John and Jane Does 1-5, collectively referred to as the Defendants, upon information and belief, alleges as follows:

### **NATURE OF THE ACTION**

1. This is an action at law to redress the deprivation of rights secured to the plaintiff under color of statute, ordinance, regulation, custom, and or to redress the deprivation of rights, privileges, and

immunities secured to the plaintiff by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. § 1983, and under New York State and City law.

2. All causes of action not relying exclusively on the aforementioned federal causes of action as a basis of this court's jurisdiction are based on the Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear state law causes of action. The events, parties, transactions, and injuries that form the basis of plaintiff's federal claims are identical to the events, parties, transactions and injuries that form the basis of plaintiff's claims under applicable State and City law.

## JURISDICTION

3. The jurisdiction of this Court is invoked under 28 U.S.C. §1343(3), this being an action authorized by law to redress the deprivation of rights secured under color of state and city law, statute, ordinance, regulation, custom and usage of a right, privilege and immunity secured to the plaintiff by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.  Jurisdiction of this court exists pursuant to 42 USC §1983 and under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

4. As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §§1391 (b) and (c).

5. All conditions precedent to the filing of this action

have been complied with. On March 11, 2016, within ninety days after the false arrest and other claims alleged in this complaint arose, a written notice of claim was served upon the defendant City of New York. The Plaintiff's claim was assigned the number 2016P1010319 by the City of New York Comptroller's office.

6.   That on June 10, 2016, plaintiff attended a hearing under General Municipal Law Section 50-h, where he was questioned by an attorney representing the City of New York, regarding his claims relating to the arrests of November 5, 2015, and June 6, 2016.

7.   This action, pursuant to New York State and City Law, with respect to the state law claims, has been commenced within one year and ninety days after the happening of the event upon which the claim is based.

## **PARTIES**

8.   Plaintiff, Jonathan Pena, is currently 24 years of age, and resides in Queens County, within the City and State of New York.

9.   The actions that form the underlying basis for this case all took place in the County of Queens, within the jurisdiction of the Eastern District of New York.

10.  Defendants Jones, Carrieri, Tran and Larosa, are police officers for the City of New York acting under color of state law. At all material times, the defendant Police Officers were employed at the 110th Precinct of the New York City Police Department, which covers the Corona area of Queens, New York. They are being sued in both their individual and official capacities.

11. The Defendant, City of New York is a municipality in the State of New York and employs the Defendant Police Officers.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12. On November 5, 2015, plaintiff Pena was returning to his grandmother's residence at 49-08 108th Street, in Corona, New York. Mr. Pena and his uncle, Dario Rodriguez, who also lives at 49-08 108th Street, had biked from Elmhurst Hospital back to their residence. Plaintiff rode his bicycle on the street until they arrived. As plaintiff was wheeling his bicycle over the sidewalk and into the residence, a New York Police Department (NYPD) patrol vehicle pulled up to the house and stopped the plaintiff and his uncle.

13. The two NYPD officials that stopped the plaintiff are described as follows: The first was a white female, she wore eye glasses and was dressed in the white shirt denoting a supervisor. The second was a white male. The officers asked plaintiff and his uncle if they had been in the vicinity of a nearby park and the plaintiff replied in the negative. The officers then asked for identification from both men, and went back to the patrol vehicle with the identification documents for about ten minutes. When they returned, the officers gave Messrs Pena and Rodriguez summons for riding a bicycle on the sidewalk.

14. The summons issued by the police officers was completely bogus, because Mr. Pena had not been riding on the sidewalk and neither officer had witnessed Mr. Pena riding on the sidewalk, and also, because this was a pretextual reason for stopping Mr. Pena.

15.   Later the same day, November 5, 2015, plaintiff Pena
      rode his bicycle from his grandmother's residence to a
      store located nearby in the vicinity of 104th Street
      and 49th. Plaintiff ordered a BLT sandwich and Snapple
      drink, then he got back on his bike to ride home. At
      this time, the same two officers who had previously
      stopped the plaintiff pulled up to the plaintiff. When
      the plaintiff stopped one of the officers flashed a
      light on his face. At this point, about four police
      officers in plainclothes who had already exited out of
      another police vehicle, grabbed the plaintiff and
      pulled him to the side.

16.   The four officers pulled Mr. Pena from his bicycle and
      walked him towards a police van, they handcuffed him,
      then they put him in a police vehicle with other
      police officers name unknown. Of the four officers who
      arrested the plaintiff, three of them were known to
      the plaintiff because they had previously arrested the
      plaintiff multiple times and stopped and frisked the
      plaintiff multiple times over the preceding three year
      period in the same neighborhood of Corona, New York.

17.   The three police officers known to the plaintiff are
      described as follows; The first is described as a
      stocky black man, believed to be Police Officer
      Anthony Jones, the second is a bearded white male who
      looks like the wrestler 'Goldberg' believed to be
      Police Officer Michael Carrieri, and the third is an
      officer of Asian origin, believed to be Sergeant Minh
      Tran.

18.   As of November 15, 2015, these three officers had at
      various times, numbering three times, stopped and
      frisked plaintiff Pena without cause, and without

arresting him or finding anything on him. The same officers had falsely arrested Mr. Pena on April 16, 2014, and charged him with a robbery that he did not commit, and that case was dismissed after Mr. Pena voluntarily took a lie detector test. The same officers had also previously arrested Mr. Pena and charged him with possession of marijuana.

19. That in the course of the aforesaid arrest on November 5, 2015, Mr. Pena was detained, manhandled, restrained and handcuffed by defendants Jones, Carrieri, Tran, Larosa, and other officers whose names are currently unknown to the plaintiff and thereafter was transported in a police vehicle to the offices of the 110th Precinct of the NYPD, where he was pedigreed, booked and further detained.

20. Plaintiff was detained in a holding cell at the 110th Precinct for 10 hours. During this period, he was never read his rights, and was never told why he had been arrested, although he asked. He also asked to be allowed to call a lawyer and was told to "shut the fuck up", by the defendants, and was not allowed to call an attorney.

21. That while plaintiff was being detained, defendants Jones, Carrieri, Tran, and Larosa completed arrest paperwork, in which they swore in part, that the plaintiff had committed a crime and or offense.

22. That the factual claims by defendants, were materially false and the defendants knew it to be materially false at the time they first made it, and every time thereafter, when they repeated it.

23. That defendants Jones, Carrieri, Tran and Larosa, forwarded these false allegations to the Queens County

District Attorney (QCDA) in order to justify the arrests and to persuade the QCDA to commence the plaintiff's criminal prosecution.

24. That as a direct result of these false allegations by the defendant police officers, the plaintiff was criminally charged in the Criminal Court of the City of New York, Queens County, under docket number 2015QN054686 with the crimes of, assault in the second degree; petit larceny; criminal possession of a weapon in the 4th degree, and harassment in the second degree.

25. That the plaintiff remained in the custody of the defendant police officers until he was brought before a Judge of the Criminal Court of the City of New York, sitting in Queens County, arraigned, and further detained.

26. The arrest of plaintiff on or about November 5, 2015, was without probable cause.

27. That the said arrest was motivated by malice and a desire on the part of defendants Jones, Carrieri, Tran, and Larosa, to injure the plaintiff and to increase the number of arrests credited to the defendants, as a way of advancing their careers as police officers.

28. That at no time prior to or during the above events was there probable cause to arrest the plaintiff, nor was it reasonable for the defendants to believe that probable cause existed.

29. At no time did any defendant take any steps to intervene in, prevent, or otherwise limit the misconduct engaged in by the defendants against the plaintiff.

30. The John Doe police officers intentionally and

deliberately gave false statements and/or failed to file accurate or corrective statements, or otherwise failed to report the conduct of defendants Jones, Carrieri and Tran, who engaged in the misconduct described herein, as required.

31. That as a result of this false arrest, plaintiff was further detained for two weeks at the Vernon C. Bain Maritime Correctional Center, (VCBC) also known as "The Boat'.

32. Plaintiff was caused to hire an attorney to defend him from the bogus criminal charges and was caused to attend court multiple times to defend the same criminal charges, from the November 5, 2015, until February 3, 2016.

33. On or about February 3, 2016, all criminal charges against Jonathan Pena stemming from the arrest on November 5, 2015, were dismissed without trial.

34. That on or about May 26, 2016, plaintiff Jonathan Pena was once again stopped, seized, searched, and strip searched by defendants Jones, Carrieri and Tran, and or other police officers acting at their behest, and charged with unknown crimes.

35. That this latest arrest occurred in front of an electronic goods store located in the plaintiff's residential neighborhood of Corona, where plaintiff had gone to shop otherwise known as 52-06 108th Street, in Queens, New York. Plaintiff was in front of the store, talking to three friends when defendants Carrieri, Jones and Tran, pulled up in an unmarked vehicle, exited their vehicle, and started to interrogate the plaintiff.

36. During the course of this interrogation, defendants

Jones, Carrieri and Tran, pulled down the plaintiff's pants right there on the street, and put their hands in his groin area and touched his testicles. Defendants never told the plaintiff what they were looking for or what reason they had to search him.

37. That after searching the plaintiff, the defendants released him and plaintiff went home. However, while at home, plaintiff noticed that a vehicle was parked stopped outside his residence for a long period of time and that the unknown occupants of the vehicle were observing the plaintiff's house for unknown reasons. Plaintiff dialed 911 and reported that he was concerned because there where suspicious individuals observing his house from a stopped vehicle. Later, plaintiff observes an NYPD patrol vehicle pull up to the first vehicle, and a conversation took place between the occupants of both vehicles and then the patrol vehicle leaves.

38. After this incident, plaintiff left his house intending to walk to a nearby store, and was immediately arrested by defendants Jones and Carrieri and charged with one count of obstructing government administration and two counts of falsely reporting an incident.

39. That in the course of the aforesaid arrest, Mr. Pena was detained, manhandled, restrained and handcuffed by Jones and Carrieri and thereafter was transported in a police vehicle to the offices of the 110th Precinct of the NYPD, where he was pedigreed, booked and further detained.

40. That while plaintiff was being detained, defendants Jones, Carrieri and Tran completed arrest paperwork,

in which they swore in part, that the plaintiff had committed a crime and or offense.

41. That the factual claims by defendants Jones, Carrieri and Tran, were materially false and the defendants knew it to be materially false at the time they first made it, and every time thereafter, when they repeated it.

42. That defendants Jones, Carrieri and Tran, forwarded these false allegations to the Queens County District Attorney (QCDA) in order to justify the arrests and to persuade the QCDA to commence the plaintiff's criminal prosecution.

43. That as a direct result of these false allegations by the defendant police officers, the plaintiff was criminally arraigned and charged under docket number 2016QN026009, in the Criminal Court of the City of New York, located in Queens County.

44. That the plaintiff remained in the custody of the defendant police officers until he was brought before a Judge of the Criminal Court of the City of New York, Queens County, arraigned, charged, and further detained.

45. The stop, search, frisk and strip search of the plaintiff on or about May 26, 2016 was without probable cause.

46. The said stop, frisk and strip search of plaintiff was motivated by malice and was also in violation of the rules and procedures governing the conduct of police officers in the performance of their duties

47. That at no time prior to or during the above events was there probable cause to stop, search, strip search or seize the plaintiff, nor was it reasonable for the

defendants to believe that probable cause existed.

48. At no time did any defendant take any steps to intervene in, prevent, or otherwise limit the misconduct engaged in by the defendants against the plaintiff.

49. The John Doe police officers intentionally and deliberately gave false statements and/or failed to file accurate or corrective statements, or otherwise failed to report the conduct of defendants Jones, Carrieri and Tran who engaged in the misconduct described herein, as required.

50. That Mr. Pena was not arrested nor charged with a crime relating to the illegal stop, frisk, search and strip search that occurred on May 26, 2016 in the vicinity of 52-06 108th Street in Queens, New York.

51. The stop/frisk/search/strip search of the plaintiff on May 26, 2016, because of defendants' knowledge of a lack of any legitimate cause or justification, were intentional, malicious, reckless and in bad faith.

52. As a direct and proximate result of defendants' actions, plaintiff was deprived of rights, privileges and immunities under the Fourth and Fourteenth Amendments to the United States Constitution. .

53. Defendant City of New York, as a matter of policy and practice, has with deliberate indifference failed to properly sanction or discipline police officers including the defendants in this case, for violations of the constitutional rights of citizens, thereby causing police officers including defendants in this case, to engage in unlawful conduct.

54. Defendant City of New York, as a matter of policy and practice, has with deliberate indifference failed to

sanction or discipline police officers including the defendants in this case, who are aware of and subsequently conceal violations of the constitutional rights of citizens by other police officers thereby causing and encouraging police officers including defendants in this case, to engage in unlawful conduct.

55. That the defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and over the New York City Police Department (NYPD).

56. Defendant New York City had actual or constructive knowledge that there was inadequate supervision over and /or within the NYPD with respect to its members' abuse of their authority, abuse of arrest powers and other blatant violations of the United States Constitution and rules and regulations of the NYPD. Despite ample notice and/or knowledge of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put in place to ensure that NYPD members engaged in law enforcement conduct themselves in a lawful and proper manner, inclusive of use of their authority as law enforcement officers with respect to the general public and specifically the plaintiff herein.

57. The defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic and institutional misuse and abuse of police authority by its NYPD employees and thereby deliberately and intentionally adopted, condoned and otherwise created through deliberate inaction and negligent supervision and NYPD policy, practice and

custom of utilizing illegal and impermissible searches, arrests and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond plaintiff's arrests.

58. That all of the acts and omissions by the defendant officers described above were carried out pursuant to overlapping policies and practices of the municipal defendant in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD.

59. The existence of the unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in a long history of civil actions in state and federal courts.

60. In an Order dated November 25, 2009, in Colon v. City of New York, 09 CV 0008 (EDNY), the court held that:

*Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration—through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong*

*disciplinary action within the department—there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.*

61. That on more than half of the occasions where the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether. That in the case of two of the arrests complained of herein, plaintiff Jonathan Pena, did complain to the CCRB and the complaints were substantiated against defendants Jones, Carrieri and Tran, and were referred by the CCRB to the NYPD for disciplinary action, but the NYPD has not disciplined the defendants and has ignored the substantiated complaints.

62. That the defendant New York City has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk and the inadequate level of supervision would lead to violation of individuals constitutional rights in general, and caused the violation of plaintiff's rights in particular.

63. The actions of all defendants, acting under color of State law, deprived plaintiff of his rights, privileges and immunities under the laws and Constitution of the United States; in particular, the rights to be secure in his person and property, to be free from the excessive use of force and from malicious prosecution, abuse of process, and the right

to due process.

64. By these actions, defendants have deprived plaintiff of rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. Section 1983.

### AS A FIRST CAUSE OF ACTION FOR THE ARREST OF 11-5-15: AGAINST DEFENDANTS JONES, CARRIERI, TRAN, AND JOHN DOES 1-5, FALSE ARREST/IMPRISONMENT: UNLAWFUL SEARCH AND SEIZURE: DEPRIVATION OF RIGHTS IN VIOLATION OF THE 4TH AND 14TH AMENDMENTS, BROUGHT PURSUANT TO 42 U.S.C § 1983/NEW YORK STATE LAW

65. By this reference, plaintiff incorporates each and every preceding allegation and averment of this complaint as though fully set forth herein.

66. In the arrest, detention and imprisonment of plaintiff on or about November 5, 2015, defendants, acting under color of state law, deprived the plaintiff of his right to be free from unreasonable search and seizure and arrest without probable cause or reasonable suspicion as required by the Fourth and Fourteenth Amendments, therefore defendants are liable for violation of 42 U.S.C. Section 1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

67. As a result of aforesaid violation, plaintiff has been caused to suffer humiliation, great mental and physical anguish, embarrassment and scorn among those who know him, was prevented from attending to his necessary affairs, and has been caused to incur legal expenses, and have been otherwise damaged in his

character and reputation.

68. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

69. The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers acts as described above.

**AS A SECOND CAUSE OF ACTION FOR THE ARREST OF 11-5-15: AGAINST DEFENDANTS JONES, CARRIERI TRAN AND JOHN DOES 1-5: MALICIOUS PROSECUTION: DEPRIVATION OF LIBERTY IN VIOLATION OF THE 4TH AND 14TH AMENDMENTS, BROUGHT UNDER 42 U.S.C§ 1983/NEW YORK STATE LAW**

70. By this reference, plaintiff incorporates each and every preceding allegation and averment of this complaint as though fully set forth herein.

71. That the defendant officers were directly involved in the initiation of criminal proceedings against the plaintiff.

72. That the defendant officers lacked probable cause to initiate criminal proceedings against the plaintiff.

73. That the defendant officers acted with malice in initiating criminal proceedings against the plaintiff.

74. That the defendant officers were directly involved in the continuation of criminal proceedings against the plaintiff.

75. That the defendant officers lacked probable cause in continuing criminal proceedings against the plaintiff.

76. That the defendant officers acted with malice in continuing criminal proceedings against the plaintiff.

77. That the defendant officers misrepresented and falsified evidence throughout all phases of the criminal proceeding.

78. That the defendant officers misrepresented and falsified evidence to the prosecutors in the Queens County District Attorney's office.

79. That the defendant officers withheld exculpatory evidence from the prosecutors in the Queens County District Attorney's office.

80. That the defendant officers did not make a complete statement of facts to the prosecutors in the Queens County District Attorney's office.

81. The arrest, imprisonment and prosecution of the plaintiff was malicious and unlawful, because plaintiff had committed no crime and there was no probable cause to believe that plaintiff had committed any crimes.

82. The defendant officers actions were intentional, unwarranted and in violation of the law. The defendant officers had full knowledge that the charges made before the Court against the plaintiffs were false and untrue.

83. By their conduct as described above, and acting under color of state law, defendants are liable to the plaintiff under 42 U.S.C. § 1983 for the violation of his constitutional right to be free from malicious prosecution under the fourth and fourteenth amendments to the United States Constitution.

84. As a consequence of the malicious prosecution by the defendant officers, plaintiffs suffered a significant loss of liberty, humiliation, mental anguish, depression, and his constitutional rights were

violated. Plaintiff hereby demands compensatory damages and punitive damages, in the amount of to be determined at trial, against defendant officers, individually and severally.

85. In addition, the defendant officers conspired among themselves to deprive plaintiff of his constitutional rights secured by 42 U.S.C. Section 1983, and by the Fourth and Fourteenth Amendments to United States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

86. The defendant officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD Officers. Said acts by the Defendants Officers were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive the Plaintiff of his constitutional rights secured by 42 U.S.C. Section 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

87. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiffs sustained the damages herein before stated.

**AS A THIRD CAUSE OF ACTION: FOR THE STOP AND FRISK OF 05-26-16: AGAINST DEFENDANTS JONES, CARRIERI, TRAN AND JOHH**

## DOES 1-5, UNLAWFUL SEARCH AND SEIZURE: DEPRIVATION OF RIGHTS IN VIOLATION OF THE 4TH AND 14TH AMENDMENTS, BROUGHT PURSUANT TO 42 U.S.C § 1983/NEW YORK STATE LAW

88. By this reference, plaintiffs incorporates each and every allegation and averment set forth in the preceding paragraphs of this complaint as though fully set forth herein.

89. In the Stop/seize/frisk/search and strip search of the plaintiff on May 26, 2016, defendants, acting under color of state law, deprived the plaintiff of his right to be free from unreasonable search and seizure and arrest without probable cause or reasonable suspicion as required by the Fourth and Fourteenth Amendments, therefore defendants are liable for violation of 42 U.S.C. Section 1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

90. As a result of aforesaid violation, plaintiff has been caused to suffer humiliation, great mental and physical anguish, embarrassment and scorn among those who know him, was prevented from attending to his necessary affairs, and has been caused to incur legal expenses, and have been otherwise damaged in his character and reputation.

91. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

92. The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers acts as described above.

**AS A FOURTH CAUSE OF ACTION: WITH RESPECT TO ARREST OF 11-5-15: AGAINST DEFENDANTS JONES, CARRIERI TRAN AND LAROSA: DENIAL OF RIGHT TO A FAIR TRIAL IN VIOLATION OF THE 4TH AND 14TH AMENDMENTS, BROUGHT PURSUANT TO 42 U.S.C. SECTION 1983**

93. By this reference, the plaintiffs incorporates each and every allegation and averment set forth in all preceding paragraphs of this complaint as though fully set forth herein.

94. Defendants Jones, Carrieri, Tran and Larosa, created false evidence against the plaintiff.

95. Defendants Jones, Carrieri, Tran and Larosa forwarded false evidence and false information to the prosecutors in the Queens County District Attorney's office.

96. Defendants Jones, Carrieri and Tran, were each directly involved in the initiation of criminal proceedings against the plaintiffs.

97. Defendants Jones, Carrieri, Tran and Larosa, each lacked probable cause to initiate criminal proceedings against the plaintiff.

98. Defendants Jones, Carrieri, Tran and Larosa, each acted with malice in initiating criminal proceedings against the plaintiff.

99. Defendants Jones, Carrieri, Tran and Larosa were directly involved in the continuation of criminal proceedings against the plaintiffs.

100. Defendants Jones, Carrieri, Tran and Larosa, each lacked probable cause in continuing criminal proceedings against the plaintiffs.

101. Defendants Jones, Carrieri, Tran and Larosa, acted with malice in continuing criminal proceedings against

the plaintiff.

102. Defendants Jones, Carrieri, Tran and Larosa, misrepresented and falsified evidence throughout all phases of the criminal proceeding.

103. Defendants Jones, Carrieri, Tran and Larosa, misrepresented and falsified evidence to the prosecutors in the Queens County District Attorney's office.

104. Defendants Jones, Carrieri, Tran and Larosa, withheld exculpatory evidence from the prosecutors in the Queens County District Attorney's office.

105. Defendants Jones, Carrieri, Tran and Larosa did not make a complete statement of facts to the prosecutors in the Queens County District Attorney's office.

106. By creating false evidence against the plaintiffs; forwarding false evidence and information to the prosecutors; and by providing false and misleading testimony throughout the criminal proceedings, Defendants Jones, Carrieri, Tran and Larosa, each violated the plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

107. As a consequence of defendant's actions, the plaintiff suffered loss of liberty, humiliation, mental anguish, depression, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages in an amount to be determined at trial, against each defendant officer, individually and severally.

## AS A FIFTH CAUSE OF ACTION AGAINST THE DEFENDANT CITY OF NEW YORK: MUNICIPAL LIABILITY UNDER 42 U.S.C § 1983

108. By this reference, plaintiffs incorporates each and every preceding allegation and averment of this complaint as though fully set forth herein.

109. The defendant officers arrested and incarcerated the plaintiff in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize the plaintiff's liberty, well-being, safety and constitutional rights.

110. The acts complained of were carried out by the individual defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

111. The defendant officers acted under color of law, in their official capacity, and their acts were performed pursuant to the customs, policies, usages, practices, procedures and rules of the City of New York and its police department.

112. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and its police department include, but are not limited to the following unconstitutional practices:

a. Wrongfully arresting individuals on the pretext that they are engaged in illegal or criminal conduct;

b. manufacturing evidence against individuals allegedly involved in illegal or criminal conduct;

c. unlawfully searching detainees and/or their property in the absence of any reasonable suspicion that said individuals were concealing weapons or contraband;

    d.  arresting  innocent  persons  in  order  to  meet "productivity" goals (i.e. arrest quotas); and

    e.  wrongfully  and  unreasonably  brutalizing  innocent members of the public, despite the lack of probable cause to do so.

113. The aforesaid event was not an isolated incident. The City and its police commissioner has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City and its police commissioner have allowed policies and practices that allow the aforementioned to persist.

114. For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to

report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

115. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event, such as the matter at bar, that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which has been done on many occasions.

116. Further, the City and its police commissioner have no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected.

117. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported

that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

118. The existence of the aforesaid unconstitutional customs and policies may also be inferred from the admission by Deputy Commissioner Paul J. Browne, as reported by the media on January 20, 2006, that commanders are permitted to set "productivity goals".

119. Furthermore, the existence of the aforesaid unconstitutional customs and policies may also be inferred from the ruling (Docket entry 32) of the Court (Eastern District of New York), in the case(s) of Jose Colon v. City of New York, et al (09-cv-8) and Maximo Colon v. City of New York, et al (09-cv-9), wherein the Court stated, *inter alia*, that *"Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting officers of the New York City Police Department"*, and that *"there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving the illegal conduct of the kind now charged"*.

120. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York, constituted a deliberate indifference to the safety, well-being and constitutional rights of all defendants, including but not limited to the plaintiff; were the proximate cause of, and moving force behind, the constitutional violations suffered by the plaintiff as alleged herein, and deprived

plaintiff of the following rights, privileges and immunities secured to him by the Constitution of the United States:

(a) The right of the plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States.

(b) The right of the plaintiff not to be deprived of life, liberty, or property without due process of law, and the right to the equal protection of the laws, secured to him by the Fifth and Fourteenth Amendments to the Constitution of the United States.

(c) The right to be free from unreasonable detention and/or continued detention without probable cause in that the plaintiff was detained.

(d) The right to be free from the use of excessive force.

121. As a result of the actions of the defendants, the plaintiff was deprived of his rights, privileges, and immunities secured by the United States Constitution, in particular, the Fourth, Fifth, and Fourteenth Amendments, in contravention of 42 USC §1983 and the laws of New York State, and New York City without just or legal cause when defendant City, by its employees and/or agents unlawfully arrested and imprisoned the plaintiff thereby depriving him of his liberty without due process of law.

122. The defendant officers were the actual agents of the defendant City of New York and were following the customs, practices, ordinances and/or regulations of the City of New York when they violated the

plaintiff's constitutional and civil rights, and the City of New York is therefore responsible for their acts, and liable to the plaintiff for the damages he suffered.

123. The actual principal/agent relationship between defendant City and the defendant officers was created by the fact they were employees of defendant City, and the City had the right to, and it did indeed regulate and control the activities and conduct of the defendant officers.

124. The defendant officers actions were vicious, wicked, cold-hearted, intentional, malicious, unwarranted and in violation of the law. The individual defendants had full knowledge that the charges made before the Court against the plaintiff were false and untrue.

**WHEREFORE**, plaintiff respectfully requests judgment against the Defendants as follows:

1. For compensatory damages against all defendants in an amount to be proven at trial;

2. For exemplary and punitive damages against all defendants in an amount to be proven at trial;

3. For costs of suit herein, including plaintiff's reasonable attorney's fees; and;

4. For such other and further relief as the court deems proper.

Dated: November 17, 2017,
       New York, New York

Chukwuemeka Nwokoro, Esq.
Nwokoro & Scola, Esquires
Attorney for Plaintiff
44 Wall Street, Suite 1218
New York, New York 10005
Tel. (212) 785-1060